## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| **KIMBERLY R. LENTZ in Her Capacity** | * | **CIVIL ACTION** |
| **as Trustee of the Bankruptcy Estate of** | * | |
| **DANIELLE R. LIPSKI** | * | **CASE NO.** |
| | * | |
| **vs.** | * | **SECT.** |
| | * | |
| **RICHARD R. SCHULZE and** | * | **MAG. DIV.** |
| **RICHARD R. SCHULZE APLC** | * | |
| | * | |

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, who respectfully represents:

*Parties*

**1.**

Plaintiff is Kimberly R. Lentz ("Lentz"), an individual domiciled and residing in the State of Mississippi, appearing herein in her capacity as Trustee of the bankruptcy estate of Danielle R. Lipski currently under administration under Title 11 of the U.S. Code, 11 U.S.C. § 101 *et seq.*, in the matter entitled "In re: Danielle R. Lipski," No. 15-51874-KMS on the docket of the U.S. Bankruptcy Court for the Southern District of Mississippi, Southern Division (the "Bankruptcy Proceeding").

**2.**

Danielle R. Lipski ("Lipski"), the debtor in bankruptcy in the Bankruptcy Proceeding, is an individual domiciled and residing in the State of Mississippi, was formerly known as Danielle Kristine Ronquille, and is also known as Danielle Ronquille-Lipski.

**3.**

Upon commencement of the Bankruptcy Proceeding, Lipski's claims described herein became the property of Lipski's bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).

**4.**

As the appointed trustee of Lipski's bankruptcy estate, Lentz has the right and duty to satisfy the claims of Lipski's creditors to the extent possible from the property of the estate, including Lipski's claims described herein, pursuant to 11 U.S.C. § 704(a)(1), and has the capacity to sue to enforce those claims pursuant to 11 U.S.C. § 323.

**5.**

Made defendants are:

(a)     Richard R. Schulze ("Schulze"), an individual domiciled and residing on information and belief in Metairie, Parish of Jefferson, State of Louisiana; and

(b)     Richard R. Schulze APLC, on information and belief a Louisiana professional law corporation with its principal place of business in Metairie, Parish of Jefferson, State of Louisiana.

*Jurisdiction and Venue*

**6.**

This Court has original subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs, and is between citizens of different States.

**7.**

This Court also has original subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §§ 1331 and 1334(b) because this civil proceeding is related to the Bankruptcy Proceeding.

**8.**

Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because the defendants reside in this district, and because a substantial part of the events and omissions giving rise to the plaintiff's claims occurred in this district.

*Facts*

**9.**

On information and belief, Schulze was at all pertinent times a lawyer licensed and admitted to practice law in the State of Louisiana.

**10.**

On information and belief, Schulze was at all pertinent times the sole shareholder and officer of Richard R. Schulze APLC.

**11.**

At all pertinent times, Richard R. Schulze APLC vested or manifested authority in Schulze to act as its agent and employee, and Schulze was an employee and agent or apparent agent of Richard R. Schulze APLC.

**12.**

At all pertinent times, Schulze was acting within the course and scope of his employment with Richard R. Schulze APLC.

**13.**

Richard R. Schulze APLC is vicariously liable for the actions of Schulze and, through Schulze, Richard R. Schulze APLC described herein.

**14.**

Schulze and Richard R. Schulze APLC are solidarily liable for the actions of Schulze and, through Schulze, Richard R. Schulze APLC described herein.

**15.**

On November 24, 2009, Lipski and her sister, Samantha Ronquille-Green ("Ronquille-Green"), signed a document entitled "Trust Instrument Michael A. Russo Trust I" (the "Trust") as co-trustees appointed by their maternal uncle and the settlor of the Trust, Michael A. Russo ("Russo"), in favor of Russo's minor step-grandson and the sole income and principal beneficiary of the Trust, Kaegen Michael Faulk ("Faulk").

**16.**

Also on November 24, 2009, Russo signed a document entitled "Last Will and Testament of Michael A. Russo" (the "Will").

Page -4-

**17.**

Russo died on February 5, 2010.

**18.**

In or about February 2011, Ronquille-Green retained Schulze to advise and represent her as her attorney in connection with the Trust, Will, and succession of Russo in exchange for payment of costs and attorney fees out of the assets of the succession or Trust.

**19.**

In the course of Schulze's representation of Ronquille-Green, Schulze advised Ronquille-Green that in his opinion the Trust and Will were invalid due to failures to observe the formalities prescribed by Louisiana law for their execution.

**20.**

On March 18, 2011, Schulze commenced succession proceedings on behalf of Ronquille-Green in the matter entitled "Succession of Michael A. Russo," No. 699-451, Div. "L" on the docket of the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana (the "Succession Proceeding").

**21.**

In the Succession Proceeding, Schulze filed and served on Faulk, through his custodian Tammy Faulk Gorman ("Gorman"), a "Petition for Declaratory Judgment" on behalf of Ronquille-Green praying for a judgment declaring that the Will and Trust were invalid, but the district court dismissed the petition for failure to state a cause of action on September 19, 2011, and the court of appeal affirmed the judgment of dismissal on May 22, 2012.

**22.**

At no time did Schulze advise Ronquille-Green that attacking the validity of the Trust would constitute a breach of the fiduciary duties of loyalty and trust that Ronquille-Green and Lipski, as co-trustees of the Trust, owed to Faulk as the Trust beneficiary.

**23.**

Had Schulze advised Ronquille-Green that attacking the validity of the Trust would constitute a breach of the fiduciary duties of loyalty and trust she and Lipski owed to Faulk, then neither Ronquille-Green nor Lipski would have attacked the validity of the Trust at any time.

**24.**

On August 17, 2012, Faulk, through his tutrix Gorman, filed a "Petition for Removal of Trustees, and Redress for Breach of Trust, for Accounting, for Appointment of Successor Trustee, and for Delivery of Trust Assets, with Rule to Show Cause" against Ronquille-Green and Lipski in the Succession Proceeding.

**25.**

In or about August 2012, Lipski retained Schulze to advise and represent her as her attorney in connection with her defense against the claims of Faulk in the Succession Proceeding in exchange for payment of costs and attorney fees out of the assets of the succession or Trust, while Schulze continued to advise and represent Ronquille-Green as her attorney in connection with her defense against the claims of Faulk in the Succession Proceeding as well.

**26.**

Subsequent to Lipski's retainer of Schulze as her attorney, Schulze defended Lipski and Ronquille-Green against the claims of Faulk in the Succession Proceeding by filing pleadings and memoranda on their behalf attacking the validity of the Trust.

**27.**

At no time subsequent to Lipski's retainer of Schulze did Schulze advise Lipski or Ronquille-Green that attacking the validity of the Trust would constitute a breach of the fiduciary duties of loyalty and trust that they, as co-trustees of the Trust, owed to Faulk as the Trust beneficiary.

**28.**

Had Schulze, subsequent to Lipski's retainer of him, advised Lipski or Ronquille-Green that attacking the validity of the Trust would constitute a breach of the fiduciary duties of loyalty and trust they owed to Faulk, then neither Lipski nor Ronquille-Green would have attacked the validity of the Trust at any time.

**29.**

On November 27, 2012 in open court with Schulze present, and in a Judgment signed on December 4, 2012, the Court in the Succession Proceeding ordered "that no assets once belonging to Michael A. Russo can be disposed pending further order of the court."

**30.**

On March 8, 2013, Schulze advised and instructed Lipski and Ronquille-Green to execute an "Act of Mortgage" by them "in their capacities as Co-Trustees of the Michael A. Russo Trust" as "Mortgagor," to Richard R. Schulze APLC as "Mortgagee," encumbering immovable property

formerly owned by Russo and conveyed by Russo to the Trust, to secure "sums owed for legal fees" claimed by Schulze in the sum of $14,313.17 (the "Act of Mortgage").

**31.**

Pursuant to Schulze's advice and instructions, Lipski and Ronquille-Green executed the Act of Mortgage on or about March 8, 2013, and Schulze recorded it in the Mortgage Records of Jefferson Parish on March 14, 2013.

**32.**

On March 31, 2014, Schulze advised and instructed Lipski and Ronquille-Green to execute a "Multiple Indebtedness Mortgage and Security Agreement" by them "in their capacities as Co-Trustees of the Michael A. Russo Trust" as "Mortgagor," to Richard R. Schulze APLC as "Mortgagee," encumbering immovable property formerly owned by Russo and conveyed by Russo to the Trust, to secure "any and all present and future indebtedness, obligations and liabilities of Mortgagor of every type or description to Mortgagee," up to a "maximum amount of Secured Obligations" in the sum of $1,000,000 (the "Multiple Indebtedness Mortgage").

**33.**

Pursuant to Schulze's advice and instructions, Lipski and Ronquille-Green executed the Multiple Indebtedness Mortgage on or about March 31, 2014, and Schulze recorded it in the Mortgage Records of Jefferson Parish on April 8, 2014.

**34.**

At no time did Schulze attempt to obtain an order of the Court in the Succession Proceeding authorizing him, Lipski, and Ronquille-Green to mortgage immovable property formerly owned by Russo and conveyed by Russo to the Trust.

**35.**

At no time did Schulze advise Lipski or Ronquille-Green that executing and recording the Act of Mortgage or Multiple Indebtedness Mortgage without court authority would constitute a violation of the Court's Judgment dated December 4, 2012 and a breach of the fiduciary duties of loyalty and trust they owed to Faulk.

**36.**

Had Schulze advised Lipski or Ronquille-Green that executing and recording the Act of Mortgage or Multiple Indebtedness Mortgage without court authority would constitute a violation of the Court's Judgment dated December 4, 2012 and a breach of the fiduciary duties of loyalty and trust they owed to Faulk, then neither Lipski nor Ronquille-Green would have executed or authorized recordation of the Act of Mortgage or Multiple Indebtedness Mortgage without court authority.

**37.**

At no time did Schulze advise Lipski or Ronquille-Green in writing of the desirability of seeking the advice of independent legal counsel regarding the execution and recordation of the Act of Mortgage or Multiple Indebtedness Mortgage, or give them an opportunity to seek the advice of independent legal counsel on the transactions, or obtain their informed written consent to the essential terms of the transactions, including whether he was representing them in the transactions.

**38.**

Had Schulze advised Lipski or Ronquille-Green in writing of the desirability of seeking the advice of independent legal counsel regarding the execution and recordation of the Act of Mortgage and Multiple Indebtedness Mortgage, or given them an opportunity to seek the advice of independent legal counsel on the transactions, or informed them in writing of the essential terms of the

transactions and that he was not representing them in the transactions, then they would have sought the advice of independent legal counsel and would not have executed or authorized recordation of the mortgages.

**39.**

At all times the actions of Lipski and Ronquille-Green as co-trustees of the Trust were taken in good faith in accordance with, and in reasonable reliance upon, the opinions and advice of Schulze as their attorney.

**40.**

On May 5, 2015, a bench trial of Faulk's claims against Lipski and Ronquille-Green was held in the Succession Proceeding, after which the Court took the matter under advisement.

**41.**

At no time during the trial of Faulk's claims against Lipski and Ronquille-Green did Schulze offer, introduce, or admit evidence establishing that Lipski and Ronquille-Green's actions as co-trustees of the Trust were taken in good faith in accordance with, and in reasonable reliance upon, the opinions and advice of Schulze as their attorney.

**42.**

At no time during the trial of Faulk's claims against Lipski and Ronquille-Green did Schulze offer, introduce, or admit evidence establishing the actual amount of the obligations secured by the Multiple Indebtedness Mortgage.

**43.**

On June 16, 2015, while Faulk's claims against Lipski and Ronquille-Green were still under advisement, Faulk offered to allow Lipski and Ronquille-Green "an opportunity to mitigate damage with cancellation of both mortgages," but Schulze declined to accept or even respond to the offer on Lipski and Ronquille-Green's behalf.

**44.**

On July 10, 2015, the Court in the Succession Proceeding rendered a Judgment (the "Judgment") finding that Lipski and Ronquille-Green "breached their fiduciary duty to the beneficiary of the trust," and finding them "jointly, severally and in solido liable to Faulk in the total amount of $1,143,066.13," itemized as follows:

> $70,280.72 for individual disbursements
> $58,472.24 for legal fees & costs
> $14,313.17 for 03.08.13 attorney fees mortgage
> $1,000,000 for 03.31.14 Multiple Indebtedness Mortgage for attorney fees
> **Total: $1,143,066.13.**

**45.**

Had Schulze offered, introduced, and admitted evidence at trial establishing that Lipski and Ronquille-Green's actions as co-trustees of the Trust were taken in good faith in accordance with, and in reasonable reliance upon, the opinions and advice of Schulze as their attorney, then Lipski and Ronquille-Green would have been "fully protected" from liability for their actions pursuant to the express terms of the Trust, and the Judgment would not have been rendered against them as a result of their actions.

**46.**

Had Schulze offered, introduced, and admitted evidence at trial establishing the actual amount of the obligations secured by the Multiple Indebtedness Mortgage, then the amount awarded in the Judgment against Lipski and Ronquille-Green would have been proportionately less.

**47.**

Had Schulze accepted Faulk's June 16, 2015 offer to allow Lipski and Ronquille-Green "an opportunity to mitigate damage with cancellation of both mortgages," then the amount awarded in the Judgment against Lipski and Ronquille-Green would have been $1,014,313.17 less.

**48.**

Even after receiving the Judgment finding Lipski and Ronquille-Green liable for $1,014,313.17 as a result of the execution and recordation of the Act of Mortgage and Multiple Indebtedness Mortgage pursuant to his advice and instructions, Schulze failed to cancel the mortgages immediately to support a motion for new trial or subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award.

**49.**

On July 15, 2015, Schulze forwarded the Judgment to Lipski and Ronquille-Green with a letter advising them that in his opinion, "a request for a new trial would be fruitless"; that "An appeal will costs [*sic*] thousands and the court of appeal may still find liability on your part"; but that filing for bankruptcy "would end everything" and make the Judgment "go away."

**50.**

Upon receipt of the Judgment and Schulze's letter dated July 15, 2015, Lipski and Ronquille-Green telephoned Schulze in a three-way conference call to discuss the option of appealing the

Judgment, but when Schulze advised them that an appeal would cost at least $8,000 and that he required payment of that amount immediately in advance, they informed him they could not afford to pay that amount.

**51.**

At no time did Schulze advise Lipski or Ronquille-Green that his immediate cancellations of the Act of Mortgage and Multiple Indebtedness Mortgage would strongly support a motion for new trial or subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award.

**52.**

Had Schulze advised Lipski and Ronquille-Green that his immediate cancellations of the Act of Mortgage and Multiple Indebtedness Mortgage would strongly support a motion for new trial or subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award, then they would have demanded that he cancel the mortgages immediately and file a motion for new trial and if necessary a subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award.

**53.**

Had Schulze cancelled the mortgages immediately and filed a motion for new trial and if necessary a subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award, then a new trial vacating or amending the Judgment to reduce the amount of the award would have been granted, or the Judgment would have been reversed or amended to reduce the amount of the award on appeal.

**54.**

Even though Schulze did not cancel the Act of Mortgage and Multiple Indebtedness Mortgage securing his costs and attorney fees incurred on behalf of Lipski and Ronquille-Green, Schulze failed and refused to file a motion for new trial or appeal the Judgment unless Lipski and Ronquille-Green paid him additional costs and attorney fees in advance in an amount he knew they could not afford.

**55.**

Had Schulze continued to represent Lipski and Ronquille-Green as their attorney in the Succession Proceeding and filed a motion for new trial or appeal from the Judgment in exchange for payment of costs and attorney fees out of the assets of the succession or Trust as agreed, then a new trial vacating or amending the Judgment to reduce the amount of the award would have been granted, or the Judgment would have been reversed or amended to reduce the amount of the award on appeal.

**56.**

After expiration of the delay for appealing the Judgment on September 21, 2015, Schulze filed a "Motion and Order to Withdraw as Counsel of Record" in the Succession Proceeding on September 29, 2015.

**57.**

As a direct result of the Judgment rendered against Lipski and Ronquille-Green in the Succession Proceeding, Lipski filed a "Voluntary Petition" under Chapter 7 of the Bankruptcy Code in the Bankruptcy Proceeding on November 12, 2015, and Ronquille-Green is insolvent and expects to be forced into bankruptcy as well.

*Claims for Legal Malpractice*

**58.**

Lentz realleges and adopts and incorporates by reference in these claims for legal malpractice the allegations and averments contained in paragraphs 1 through 57 herein.

**59.**

As Lipski's attorney, Schulze owed Lipski professional fiduciary duties to exercise at least that degree of care, skill, and diligence exercised by prudent attorneys practicing in his community or locality, and to deal with Lipski only on the basis of the strictest fidelity and honor.

**60.**

In the course of Schulze's representation of Lipski as her attorney in the Succession Proceeding, Schulze breached his professional fiduciary duties owed to her by committing numerous negligent acts and omissions including but not limited to the following:

a. Schulze negligently attacked the validity of the Trust on Lipski's behalf in breach of the fiduciary duties of loyalty and trust that Lipski and Ronquille-Green, as co-trustees of the Trust, owed to Faulk as the Trust beneficiary.

b. Schulze negligently failed to advise Lipski that attacking the validity of the Trust would constitute a breach of the fiduciary duties of loyalty and trust that she and Ronquille-Green owed to Faulk.

c. Schulze negligently advised and instructed Lipski to execute the Act of Mortgage and Multiple Indebtedness Mortgage, and then recorded them in the public records, without court authority in violation of the Court's Judgment dated December 4, 2012 and in breach of the fiduciary duties of loyalty and trust that Lipski and Ronquille-Green owed to Faulk.

**d.**     Schulze negligently failed to advise Lipski that executing and recording the Act of Mortgage and Multiple Indebtedness Mortgage without court authority would constitute a violation of the Court's Judgment dated December 4, 2012 and a breach of the fiduciary duties of loyalty and trust she and Ronquille-Green owed to Faulk.

**e.**     Schulze negligently failed to advise Lipski in writing of the desirability of seeking the advice of independent legal counsel regarding the execution and recordation of the Act of Mortgage and Multiple Indebtedness Mortgage, or to give her an opportunity to seek the advice of independent legal counsel on the transactions, or to obtain her informed written consent to the essential terms of the transactions, including whether he was representing her in the transactions.

**f.**     At the trial of Faulk's claims against Lipski, Schulze negligently failed to offer, introduce, or admit evidence establishing that Lipski's actions as co-trustee of the Trust were taken in good faith in accordance with, and in reasonable reliance upon, the opinions and advice of Schulze as her attorney.

**g.**     At the trial of Faulk's claims against Lipski, Schulze negligently failed to offer, introduce, or admit evidence establishing the actual amount of the obligation or obligations secured by the Multiple Indebtedness Mortgage.

**h.**     Schulze negligently failed to accept Faulk's June 16, 2015 offer to allow Lipski "an opportunity to mitigate damage with cancellation of both mortgages."

**i.**     Upon receipt of the Judgment, Schulze negligently failed to advise Lipski that his immediate cancellations of the Act of Mortgage and Multiple Indebtedness Mortgage would strongly support a motion for new trial or subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award against her.

**j.**      Upon receipt of the Judgment, Schulze negligently failed to cancel the Act of Mortgage and Multiple Indebtedness Mortgage immediately to support a motion for new trial or subsequent appeal seeking reversal or amendment of the Judgment to reduce the amount of the award against Lipski.

**k.**      Schulze negligently breached his agreement to represent Lipski as her attorney in the Succession Proceeding in exchange for payment of costs and attorney fees out of the assets of the succession or Trust by failing and refusing to file a motion for new trial or appeal the Judgment unless Lipski paid him additional costs and attorney fees in advance in an amount he knew she could not afford.

*l.*      Schulze negligently failed to file any motion for new trial or appeal of the Judgment.

**61.**

As a direct and proximate result of Schulze's breaches of his professional fiduciary duties owed to Lipski as her attorney in the Succession Proceeding, Lipski suffered damages in the amount of the Judgment rendered against her in the Succession Proceeding in the principal sum of $1,143,066.13 plus costs and legal interest.

**62**.

Pursuant to Louisiana Negligence Law, La. Civ. Code art. 2315 *et seq.*, Lipski is entitled to recover from Schulze the damages caused to her by Schulze's acts of legal malpractice described herein.

**63.**

Pursuant to Bankruptcy Code §§ 323, 541(a)(1), and 704(a)(1), Lipski's legal malpractice claims against Schulze became the property of Lipski's bankruptcy estate upon commencement of the Bankruptcy Proceeding on November 12, 2015, and therefore Lentz is now entitled to recover from Schulze, for the benefit of Lipski's creditors, the damages caused to Lipski by Schulze's acts of legal malpractice described herein. 11 U.S.C. § 323; 11 U.S.C. § 541(a)(1); 11 U.S.C. § 704(a)(1).

**64.**

As Lipski and Ronquille-Green are liable "in solido" for the amount of the Judgment, therefore, pursuant to La. Civ. Code art. 1790, they are solidary obligees for the damages caused by Schulze's acts of legal malpractice described herein, and pursuant to La. Code Civ. P. art. 643, Lentz may sue to enforce Lipski's legal malpractice claims against Schulze without the necessity of joining Ronquille-Green in this action.

WHEREFORE, plaintiff Kimberly R. Lentz, in her capacity as Trustee of the bankruptcy estate of Danielle R. Lipski, respectfully prays for judgment in her favor and against defendants Richard R. Schulze and Richard R. Schulze APLC awarding the amount of the Judgment rendered against Lipski in the Succession Proceeding in the principal sum of $1,143,066.13 plus costs and legal interest, and such other and further relief as the Court deems just and equitable in the premises, and all such relief to which Lentz is entitled.

**RESPECTFULLY SUBMITTED,**

*/s/ Jack E. Morris*

_____

**JACK E. MORRIS (Bar No. 22539) (T.A.)**
**JACK E. MORRIS, ATTORNEY AT LAW, LLC**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana 70002**
**Telephone: (504) 454-2769**
**Facsimile: (504) 454-3855**
**Email: jem@jemorrislaw.com**

*ATTORNEY FOR PLAINTIFF*
*KIMBERLY R. LENTZ IN HER CAPACITY AS*
*TRUSTEE OF THE BANKRUPTCY ESTATE OF*
*DANIELLE R. LIPSKI*